UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA H.,[1]

                        Plaintiff,          **DECISION AND ORDER**

v.                                              1:22-cv-297-JJM

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that she was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [9, 10].[2] The parties have consented to my jurisdiction [14]. Having reviewed their submissions [9, 10, 11], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

        The parties' familiarity with the 998-page administrative record [6] is presumed. On November 5, 2019, plaintiff filed applications for disability insurance benefits and supplemental security income, alleging an onset date of June 1, 2010. Administrative Record [6]

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

at 21.  Plaintiff complained of various physical and mental ailments. Id. at 86-87. Plaintiff's claim was initially denied. Id. at 97.

### A.     The Hearing

At plaintiff's request, Administrative Law Judge ("ALJ") Brian LeCours conducted a telephonic hearing on December 9, 2020. Id. at 17, 32-65.  Plaintiff was represented by an attorney. Id. at 35.

At the hearing, plaintiff testified that she lived with her daughter and three school-aged grandchildren. Id. at 39. She stated that she does not drive anymore. Id. She last worked in 2010, as a cleaner at a bingo hall. Id. at 39-40. Prior to that, she worked as a "receptionist for the court system", where she would log the incoming mail and walk it over to another building. Id. at 40-41. She testified that there was "really no paperwork" involved in that job, but indicated that she would do filing, answer phone calls, and organize mail. Id. at 41-42. Plaintiff testified she was in special education at school, does not have her GED, and can "barely" read or write. Id. at 45. However, plaintiff was able to copy addresses from the mail she sorted. Id.

Plaintiff further testified that her daughter occasionally helps her manage her money. Id. at 46. Plaintiff has never lived alone. Id. She is not able to mop, sweep, or do her own laundry. Id. at 53-54. She can bathe and dress herself. Id. at 54.  She cares for her grandchildren when they are not in school, but she noted that they are old enough to do things for themselves. Id. at 55. She reported taking medication for depression and anxiety. Id.

A vocational expert testified that plaintiff could perform her previous work as a receptionist if she were able to occasionally perform complex tasks and could perform tasks that can be learned within six months. Id. at 60-61. She testified that plaintiff would be precluded

from performing past relevant work if she were limited to unskilled work requiring little or no judgment. Id.

**B.     The ALJ's Decision**

On December 23, 2020, ALJ LeCours issued a Notice of Decision denying plaintiff's claim. Id. at 17-26.  He found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease, osteoarthritis and degenerative joint disease of the knee, obesity, affective disorder, and a learning disorder. Id. at 19. He assessed plaintiff with mild limitations adapting or managing oneself; mild to moderate limitations in her ability to understand, remember, or apply information, as well as concentration, persistence, or maintaining pace; and no limitations in interacting with others. Id. at 21.

ALJ LeCours determined that plaintiff retained the RFC to perform light work with the following exceptions: plaintiff can tolerate no more than occasional exposure to pulmonary irritants, and she can perform tasks that can be learned in six months. Id. at 22. He concluded that plaintiff could perform past relevant work as a receptionist. Id. at 26. Accordingly, he found plaintiff not disabled. Id.

**C.     The Medical Evidence**

In assessing plaintiff's mental impairments, ALJ LeCours considered her testimony, her treatment history, and the following medical opinions.

In a November 2002, Mark Gunther, Ph.D., performed a neuropsychology consultative of plaintiff. Id. at 353-54. Dr. Gunther reported that plaintiff had a seventh-grade special class education. Id. at 353. Dr. Gunther's testing indicated that plaintiff had "inferior" verbal IQ, "low average" performance IQ, and a "borderline" full scale IQ. Id. Plaintiff's word

-3-

reading, reading comprehension, pseudo-word decoding, and written expression were each assessed as "inferior". Id. at 354.

In a February 2020 psychiatric evaluation, consultative examiner Susan Santarpia, Ph.D., diagnosed plaintiff with affective disorders that "d[id] not appear to be significant enough to interfere with [plaintiff's] ability to function on a daily basis". Id. at 932-35. Dr. Santarpia assessed plaintiff as having fluent speech intelligibility and coherent thought process, but that her attention and concentration were "mildly impaired", and that her cognitive function was "low average". Id. at 934. She reported to Dr. Santarpia that she was able to dress, bathe, and groom herself; cook, clean, do laundry, shop, manage her own money, socialize with friends and family, spend her day as a primary caregiver for her three grandchildren, knit, and watch television. Id. ALJ LeCours found Dr. Santarpia's opinion to be "consistent with the overall record". Id. at 23.

On February 27, 2020, state agency psychologist M. Butler, Ph.D., reviewed plaintiff's records and opined that plaintiff had only mild mental defects. Id. at 92-93. Upon a request for reconsideration, K. Lieber-Diaz, Ph.D., opined on May 11, 2020, that "although the foundation of [a learning disability] was long established", plaintiff had no more than moderate limitations and was capable of performing unskilled work on a sustained basis. Id. at 128, 132-34. ALJ LeCours rejected any limitation to unskilled work as unsupported and credited earlier agency opinions assessing plaintiff with non-severe impairments. Id. at 23.

On October 1, 2020, Peterkin Lee-Kwen, M.D. conducted a neurological evaluation of plaintiff. [6] at 986-89. Dr. Lee-Kwen noted that plaintiff had a "history of learning disability", was in special education at school, and completed eighth grade. Id. at 988. He rated plaintiff 1 out of 5 in serial sevens counting and spelling a word backwards. Id. at 987. Plaintiff

was unable to repeat a common phrase, write a sentence, or copy a diagram. Id. ALJ LeCours did not discuss this opinion.

In a December 7, 2020 treating source statement, Rebecca Salerno, PAC, opined, in relevant part, that plaintiff had poor attention span and recall, impaired concentration, and a learning disorder. Id. at 991-96. ALJ LeCours found this opinion not persuasive, on the basis that such limitations were not clearly documented on treatment records. Id. at 22.

ALJ LeCours reviewed plaintiff's medical records and concluded that her depression and anxiety were non-severe, as evidenced by plaintiff's discontinuation of treatment for those impairments. Id. at 23. As to plaintiff's learning disorder, ALJ LeCours found that the cognitive limitations suggested by plaintiff and a 2002 intelligence test were unpersuasive, as she performed prior work at the semi-skilled level, attained her driver's license, manages money, shops, cooks, is the primary caregiver to three grandchildren, and could perform serial threes and performed serial seven testing with only minor errors. Id. at 24.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also

not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. See Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

B.  **The ALJ's Decision Was Not Supported by Substantial Evidence**

Plaintiff argues that ALJ LeCours erred in concluding that she was capable of performing semi-skilled work, arguing that such a finding failed to account for her learning and affective disorders; improperly relied on activities of daily living, including childcare; and improperly relied on her previous secretarial work which he characterized as semi-skilled work despite plaintiff's testimony that such work required little to no paperwork and that she could barely read or write. Plaintiff's Brief [9-1] at 6-9. The Commissioner argues that the ALJ properly discounted plaintiff's alleged cognitive limitations by finding that her work history and activities of daily living sufficiently demonstrated her ability to perform work at the semi-skilled level. Commissioner's Brief [10-1] at (*citing* ALJ Decision [6] at 24). I agree with plaintiff.

While "the evidentiary threshold for the substantial evidence standard 'is not high,' . . . [it] is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations". Colgan, 22 F.4th at 359. "As deferential as the 'substantial evidence' standard is, it is also . . . gives federal courts the freedom to take a case-specific, comprehensive view of the administrative proceedings, weighing all the evidence to determine whether it was 'substantial.'" Brault v. Commissioner of Social Security, 683 F.3d 443, 449 (2d Cir. 2012). Moreover, "the [Social Security] Administration's

discretion in making factual determinations is also constrained by self-imposed regulations". Colgan, 22 F.4th at 359.

Here, ALJ LeCours found that plaintiff was capable of performing semi-skilled work. [6] at 22, 24, 26. That determination appears to have been based primarily on plaintiff's past employment experience and her activities of daily living, and in spite of evidence indicating that plaintiff had "borderline" intellectual functioning and "inferior" reading abilities. Id. at 22, 24, 26, 353-54. ALJ LeCours found that "[a]s for the claimant's learning disorder, the allegations of inability to read or write, and results of the 2002 formal intelligence test [], these do not appear to be a great or persuasive factor, particularly since she successfully performed work at the semi-skilled levels with reported duties that included some record-keeping. She was also able to attain a driver's license, manages money, shops, and cooks. She is the primary caregiver for her three grandchildren." Id. at 24.

While "the claimant has the burden [at step four] to show an inability to return to her previous specific job and an inability to perform her past relevant work generally", "[t]his inquiry requires separate evaluations of the previous specific job and the job as it is generally performed". Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003); *see also* Glessing v. Commissioner of Social Security, 725 F. App'x 48, 49 (2d Cir. 2018). Plaintiff testified at the hearing that she worked as a "receptionist for the court system"; however, the job she described seemed to relate primarily to mail handling and delivery. Id. at 40-41. While she would occasionally do filing and answer phone calls, she stated that there was "really no paperwork" involved in that job. Id. at 41-42. She testified that she was able to copy addresses from the mail she sorted, but she required help from friends to sound out words. Id. at 45, 49. She also testified that she could "barely" read or write. Id. at 45. She did not think she could perform this kind of

job, which she last performed in 2005, as it currently exists due to the increased demands of the modern workplace. Id. at 49.

At the hearing, the vocational expert defined this past employment as a "receptionist" as described by Dictionary of Occupational Titles ("DOT") code 352.667-010. Id. at 59. While she modified the exertional level for that job title based on plaintiff's testimony of the work performed, she did not modify any of the general education development ("GED") criteria. Id. That is significant because the GED criteria for the receptionist title contemplates both a Reasoning Development and Language Development level of 3. See DICOT 352.667-010 (G.P.O.), 1991 WL 672913. A Reasoning Development level of 3 is described, in part, as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form". Id. A Language Development level of 3 is described as the ability to "[r]ead a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work" as well as to "[w]rite reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech". Id. These ability levels seem ambitious for a person who was assessed with "borderline" intellectual functioning, "inferior" reading abilities, and required help from coworkers to sound out words. Id. at 49, 353-54.

While ALJ LeCours discounted plaintiff's intelligence assessment and self-reported language limitations, he did so, in large part, based on the assumption that she was able to perform work as a receptionist as defined, *i.e.*, as semi-skilled work. See id. at 24. However, the only evidence of record as to plaintiff's duties at that job was her testimony, and, as

discussed, that testimony raises significant doubt as to whether that job was performed at a level contemplated by the applicable title.

    While plaintiff bears the burden of proof as to her past relevant work, Social Security Ruling 00-4p provides that "[o]ccupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT" and "[w]hen there is an apparent unresolved conflict between [such] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on [such evidence]". SSR 00-4p, 2000 WL 1898704; *see* Gonzalez-Cruz v. Commissioner of Social Security, 294 F. Supp. 3d 164, 192 (W.D.N.Y. 2018). This coincides with the general obligations that an ALJ render a decision that is supported by substantial evidence and to develop the record where such evidence is lacking. *See* Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).

    Moreover, the ALJ's factual determinations must comport with relevant Social Security Administration ("SSA") regulations. *See* Colgan, 22 F.4th at 359. Section 404.1564 of the SSA regulations sets out four educational categories and their default relationship to performing skilled, semi-skilled, or unskilled work. 20 C.F.R. §404.1564(a)-(c). Plaintiff's formal education ended somewhere between 7th and 9th grade (or the special education equivalent thereof), which would place plaintiff at the lower end of the "limited education" category. 20 C.F.R. §404.1564(b)(3) ("[w]e generally consider that a 7th grade through the 11th grade level of formal education is a limited education."). "Limited education means [some] ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." Id.  Thus, a person with plaintiff's education level is, by regulation, presumptively unable to perform semi-skilled work.

It is true that "[e]vidence such as past work experience, the kind of responsibility an individual may have had when working, daily activities, hobbies, results of testing, community projects, or vocational training, may show that an individual's actual educational abilities are higher or lower than his or her formal education level". SSR 20-01p, 2020 WL 1083309 ("How We Determine an Individual's Education Category"). Also, "[w]e . . . will not find an individual's education category to be lower than his or her highest level of formal education based solely on an individual's history of having received special education". Id. Nonetheless, ALJ LeCours' observation that plaintiff's past relevant work included "some record-keeping" ([6] at 24) falls short of adequately explaining why an upward departure from plaintiff's default education category was justified. See Arch v. Commissioner of Social Security, 2021 WL 4200719, *12 (S.D.N.Y. 2021) ("[i]t is the ALJ's responsibility to 'build an accurate and logical bridge from the evidence to [his] conclusion to enable meaningful review").

Finally, I note that ALJ LeCours did not address Dr. Lee-Kwen's October 2020 neurological evaluation. See [6] at 986-89. While this is not a functional opinion *per se*, Dr. Kwen's findings conflict with certain findings by the ALJ that were critical to his determination regarding semi-skilled work, for example, that plaintiff was able to complete serial sevens with "only minor errors" Id. at 24; compare id. at 987 (rating plaintiff a 1 out of 5 in serial sevens counting). Where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p (1996), 1996 WL 374184, *7; see Mary R. v. Commissioner of Social Security, 2022 WL 4376219, *2 (W.D.N.Y. 2022). "While the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' she cannot simply selectively choose evidence in the record that supports her

conclusions." Dioguardi v. Commissioner of Social Security., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citations omitted).

The inadequate findings at step four are prejudicial and require remand because the vocational expert testified that limiting plaintiff to unskilled work would be preclusive of performing past relevant work. [6] at 61. The ALJ made no step five findings. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) ("[a]t Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform"). The Commissioner bears the burden of proof at step five. See Talavera, 697 F.3d at 151; Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983) ("[t]he Secretary must . . . prove the existence in the national economy of jobs suited to the claimant's physical and vocational capabilities"). Here, there is no discussion on the record about whether there are alterative jobs plaintiff can perform, let alone whether such jobs exist in significant number in either the national or regional economy. Therefore, the Commissioner's burden in the alternative scenario is not met. See Sanchez v. Berryhill, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) ("[i]f the Commissioner cannot meet his or her burden to demonstrate that such work exists, then the claimant will be found disabled under the Act").

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [9] is granted to the extent of remanding this claim to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied, and the Commissioner's motion for judgment on the pleadings [10] is denied.

**SO ORDERED.**

Dated: September 24, 2024

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. McCARTHY
United States Magistrate Judge